UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JIAN GUO YANG,
    *on his own behalf and on behalf of others similarly situated*,

                                    Plaintiff,

                -against-                         **MEMORANDUM AND ORDER**
                                                        19-CV-5203-CBA-SJB

ZHOU'S YUMMY RESTAURANT, INC.,
    *doing business as Zhou's Yummy*,
JINLIANG ZHOU,
XI QIN WU,

                                    Defendants.
-----------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

        On November 29, 2019, Plaintiff Jian Guo Yang ("Yang") filed a motion for conditional certification of a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). (Pl.'s Mot. for Conditional Collective Certification dated Nov. 29, 2019, Dkt. No. 18 at 1). Yang has moved for conditional certification of his FLSA claims for all "current and former non-exempt employees employed at any time from September 12, 2016 to the present." (Ex. Proposed Notice of Pendency and Consent to Join Form dated Nov. 29, 2019 ("Proposed Notice"), Dkt. No. 19 at 1). In support of his motion, Yang filed an affidavit in which he lists nine other employees whom he befriended while he was working at Zhou's Yummy Restaurant. (Aff. of Jian Guo Yang dated Oct. 24, 2019 ("Yang Aff."), Dkt. No. 19). Yang alleges generally that these nine other employees, who held various different titles at Zhou's Yummy Restaurant, had "substantially [the] same working schedule[s]" as him, worked over 40 hours a week, but were paid various flat rates without overtime compensation. (*Id.* at 5–6). No other evidence was provided in support of his motion. Defendants Zhou's

Yummy Restaurant ("Zhou's Yummy"), Jinliang Zhou ("Zhou"), and Xi Qin Wu ("Wu") (collectively, the "Defendants") oppose conditional certification.  Defendants argue that Yang's single affidavit fails to meet even the modest factual showing plaintiffs must provide at the preliminary stage for FLSA collective certification.  (Defs.' Mem. of Law in Opp'n dated Jan. 3, 2020 ("Defs.' Mem."), Dkt. No. 24).  The Honorable Carol B. Amon referred the motion to the undersigned for decision.[1]  (Order Referring Mot. dated Jan. 21, 2020).  For the reasons stated below, the motion is denied without prejudice to renewal.

## FACTS

The following facts are drawn from the affidavits submitted in support of the respective motions.  Yang alleges that he worked at Zhou's Yummy as a Barbecue Chef from on or about November 2015 to August 10, 2019.  (Yang Aff. ¶ 3).  He avers that he worked over 60 hours a week for each week of his employment and was always paid a flat monthly salary that did not account for overtime hours.  (*Id.* ¶¶ 6, 8, 23).  His flat rate was initially $2,200 per month when he first began working at Zhou's Yummy and then increased slowly over the years to $3,300 per month from August 2018 to August 2019.  (*Id.* ¶¶ 10–21).  Yang contends that during this time, he was never paid any overtime pay for hours worked in excess of 40 hours per week as required under FLSA, nor was he paid a spread of hours premium for shifts that lasted longer than ten hours as required under the NYLL.  (*Id.* ¶¶ 23, 25).  He also claims that he was never given a

---

[1] Federal law permits "a magistrate judge to hear and determine any pretrial matter pending before the court," 28 U.S.C. § 636(b)(1)(A), including a motion for conditional certification of a collective action, which is only a "preliminary determination" and not dispositive.  *Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 265–67 (E.D.N.Y. 2005); *see also Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 383–84 (E.D.N.Y. 2010) (collecting cases).

fixed time for lunch or dinner and never received a pay statement from Zhou's Yummy detailing weekly payment, including rates of pay, deductions, and gross and net wages in Chinese, his native language. (*Id.* ¶ 24).

Yang further asserts that there were at least 12 employees at the restaurant at any one time, including four waiters, two fry woks, one miscellaneous worker, one meat cutter, one kabob chef, one dishwasher, and two barbecue chefs. (Yang Aff. ¶ 26). He claims that during his employment, he "befriended some co-workers, observed, and talked with them about our work." (*Id.* ¶ 27). Yang allegedly spoke to nine employees. Six of these workers are identified by just their last name and title (*e.g.* Kabob Chef Li); full names have only been provided for two workers (Qing Yun Li and Yiyi Qi), and one is referred to as "Male Fry Wok." (*Id.*). The nine employees were employed either as a fry wok, miscellaneous worker, kabob chef, dishwasher or a waiter. (*Id.*). Yang explains that he learned from "chatting" with these employees about their work that they had "substantially [the] same working schedule[s]" as him and were paid flat rates ranging from $2,300 to $3,400 per month. (*Id.* ¶¶ 27, 32, 40, 45, 55, 59, 63). For two of these workers, "Miscellaneous Worker Zhao" and "Waitress Cai," Yang does not know either their work schedule or rate of pay. (*Id.* ¶ 27).

Zhou disputes many of these facts. Zhou is the sole shareholder and President of Zhou's Yummy Restaurant. (Aff. in Opp. to Mot. to Certify FLSA Collective Action ("Zhou Aff.") dated Jan. 3, 2020, Dkt. No. 23 ¶ 1). He manages the day-to-day operations of Zhou's Yummy. (*Id.* ¶ 2). Zhou claims that he hired Yang as a barbecue chef beginning in September 2017. (*Id.* ¶ 4). He also avers that Zhou's Yummy has three different departments: waiting services, kitchen, and barbecue, and that the staff for each of these departments have different shift schedules. (*Id.* ¶¶ 8–9). Zhou claims

3

that employees kept punch cards for hours worked. (*Id.* ¶ 5). According to Zhou, Yang requested that his pay be made in cash and be paid biweekly. (*Id.* ¶ 11). Zhou contends that he did pay Yang overtime wages at the required rate of one and a half times the regular hourly rate for hours worked in excess of 40. (*Id.* ¶ 10).[2]

## DISCUSSION

While Yang's burden at this stage of the case is minimal, he must still make a "modest factual showing" that he and fellow non-exempt employees were "victims of a common policy or plan that violated the law." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (quotations omitted); *see also Jin Yun Zheng v. Good Fortune Supermarket Grp. (USA), Inc.*, No. 13-CV-60, 2013 WL 5132023, at *4 (E.D.N.Y. Sept. 12, 2013) ("The court must find some identifiable factual nexus which binds the named plaintiffs and potential class members together as victims of particular illegal practices. Plaintiffs must make a *factual* showing; [m]ere allegations in the complaint are not sufficient [.]" (quotations and citations omitted)). While "[a] single affidavit from a single plaintiff may suffice in meeting this burden[,] . . . the plaintiff cannot simply state [her] belief that others are similarly situated based on conversations with or observations of those potential opt-in members; rather, [she] must supply

---

[2] There is an additional factual dispute. Defendants have provided Yang's punch cards as evidence that Yang was paid overtime. (Ex. A Punch Cards dated Jan. 3, 2020, Dkt. No. 22). Zhou claims that the calculations written on the back of these punch cards indicate how much pay, including overtime, Yang earned each week. (Zhou Aff. ¶¶ 10–11). Yang claims that these punch cards are false records and that nothing was ever written on the back of them. (Aff. in Supp. Mot. to Certify FLSA Collective Action dated Feb. 10, 2020 ("Yang Reply Aff."), Dkt. No. 27 ¶¶ 11, 16). Whether the punch cards are sufficient to establish the payment of overtime or are instead falsified records is not an issue to be decided at this stage of the case. *See Summa*, 715 F. Supp. 2d at 385 ("At [this] initial assessment stage, . . . the Court does not resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations." (quotations omitted)).

4

additional detail regarding the particular conversations or observations substantiating that belief." *Joshi v. Flagship S B Amsterdam NY, LLC*, No. 17-CV-5785, 2018 WL 1135566, at *3 (S.D.N.Y. Mar. 1, 2018) (quotations omitted). "Although plaintiffs' burden is not onerous, they must provide actual evidence of a factual nexus between their situation and those that they claim are similarly situated rather than mere conclusory allegations." *Qing Gu v. T.C. Chikurin, Inc.*, No. 13-CV-2322, 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014).

Here, Yang has not met the modest factual showing necessary to demonstrate that he and the other employees were victims of a common policy or plan that violated the law. Yang's single affidavit is filled with conclusory allegations that generally state he became familiar with a number of employees and their monthly salaries by "chatting" with them. (*See, e.g.*, Yang Aff. ¶ 36 ("I know this because we both worked in the kitchen and often chatted about work."), ¶ 40 (same), ¶ 45 ("I know this because we used to chat about work."), ¶ 50 ("Chen was paid a flat rate of two thousand three hundred dollars ($2,300) to two thousand four hundred dollars ($2,400) per month. I know this because we used to chat about our work.")). Despite "chatting" with these employees, and working with them for years, he does not know the first names of six of the nine employees he spoke with; for one he provides only the title of his position. (*Id.* ¶ 27 ("Male Fry Wok")). No information is provided as to when or where these conversations took place during Yang's many years of employment. Because "the Court does not know where or when these observations or conversations occurred, which is critical in order for the Court to determine the appropriate scope of the proposed [collective] . . . and notice process," certification is not possible. *Sanchez v. JMP Ventures, L.L.C.*, No. 13-CV-7264, 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27,

5

2014). "[T]he Court is left with a list of generalized allegations that have been molded into a declaration which reads similarly to the complaint. These are precisely the kind of unsupported assertions and conclusory allegations that courts . . . have found to be insufficient to conditionally certify a class under § 216(b)." *See Joshi*, 2018 WL 1135566, at *4 (quotations omitted).

 Furthermore, there is insufficient evidence presented to demonstrate that all of the employees in the restaurant were subject to a common policy that violates FLSA. Yang attempts to certify a collective of all restaurant employees, most of whom were not employed in the same capacity as he was, and who worked in different areas of the kitchen, presumably performing different tasks at different times. The affidavit itself suggests that all employees were not subject to the same wage policy as Yang. For instance, while all the other employees were paid per month, the Kabob Chef was paid eight cents per kabob. (Yang Aff. ¶ 55). For one of the waiters, Yang does not know the amount she was paid. (*Id.* ¶ 67).

 As for the hours worked, Yang alleges that eight of these employees (Barbecue Chef Cu, Fry Wok Qing Yun Li, the unidentified "Male Fry Wok," Miscellaneous Worker Chen, Kabob Chef Li, Dishwasher Chen, Waitress Yiyi Qi, Waitress Cai) worked "substantially [the] same working schedule" as him. (*Id.* ¶ 27). But working "substantially" the same schedule as another employee does not establish that there was a FLSA violation: because a small variation in hours can turn an employer's lawful wage payments into a FLSA violation, alleging that other employees worked "substantially" the same number of hours prohibits the Court from concluding that because Yang was not paid properly, other employees must also have been. For example, Yang alleges that he worked 61.25 hours a week in September 2018 (*id.* ¶ 8);

6

but had he worked 55 hours instead, a mere 6 hours less per week or roughly under one hour less per day, his September 2018 salary of $3,300, (*id.* ¶ 21), would have met the FLSA requirements for minimum wage and overtime pay.³ Yang alleges that eight of these nine employees worked "substantially [the] same" hours to him, but a difference of less than an hour in a daily work schedule would mean that there was no FLSA violation. Furthermore, Yang admits a lack of knowledge about the hours worked by the "miscellaneous" worker and the wages of one waiter. (*Id.* ¶ 27). Yet Yang attempts to include these categories of staff in the scope of the collective. Given all these deficiencies, Yang's single affidavit is insufficient to certify a collective comprised of this broad range of employees over a three-year period.⁴ *See, e.g., Mata v. Foodbridge LLC*, 2015 U.S. Dist. LEXIS 70550, *10 (S.D.N.Y. June 1, 2015) ("While his declaration lists the names and titles of seventeen coworkers—including food preparers, pizza men, counter persons, a cook, a grill man, a juice preparer, a porter, a delivery person, a dishwasher, and a panini preparer—who he ostensibly observed

---

³ In 2018, the minimum wage in New York for businesses with more than 11 employees was $13 an hour. *See* N.Y. Lab. Law § 652(1)(a). Where a state's minimum wage is higher than the federal minimum wage, the employer must pay the state minimum wage to satisfy FLSA's minimum wage requirement. 29 C.F.R. § 778.5; *see also* 29 U.S.C. § 218(a); *Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997, 2017 WL 5033650, at *15 (E.D.N.Y. Sept. 22, 2017). The overtime wage rate for an employee receiving minimum wage would be $19.50 an hour. "[U]nder FLSA, unpaid overtime wages are calculated by first determining the employee's regular hourly rate, and then multiplying that number by 1.5." *Payamps v. M&M Convenience Deli & Grocery Corp.*, No. 16-CV-4895, 2019 WL 8381264, at *8 n.5 (E.D.N.Y. Dec. 9, 2019), *report and recommendation adopted,* (Order dated Mar. 31, 2020). As a result, for 55 hours of work each week, Zhou would be required to pay $2,080 in minimum wage plus $1,170 for overtime for a total of $3,250 per month.

⁴ The parties also do not address how the New York Hospitality Wage Order affects the calculation of unpaid wages and overtime. *See* 12 NYCRR 146-3.2 (noting that exempt employees include those that make above a certain salary each week).

7

doing work the same or similar to his own, he includes no concrete facts evidencing a common scheme or plan of wage and hour violations for employees engaged in different job functions[.]").

Plaintiff may file a renewed motion with additional evidence regarding the prospective collective members and the alleged illegal policies to which they were subjected. For such a motion to prevail, Yang must demonstrate that there was a common wage and hour policy that violated FLSA and that other employees who worked in different areas and with different titles were subject to this common policy. Any allegations submitted must contain details about the basis for Yang's belief, including details about when and where conversations took place; conclusory and vague allegations will be insufficient. Should the renewed motion meet the factual requirements for conditional certification, the Court will then address Plaintiff's proposed notice, request for disclosure of contact information for all non-exempt employees from September 12, 2016 until present, and whether the statute of limitations under the FLSA should be extended to three years.

CONCLUSION

The Court denies without prejudice Yang's motion to certify a collective action under FLSA and grants Yang leave to supplement the evidence he has already provided. Yang should provide any additional information and renew any motion for conditional certification by **May 28, 2020.** The Defendants may respond to such a motion by **June 11, 2020.**

                                                SO ORDERED.

                                                */s/ Sanket J. Bulsara* April 28, 2020
                                                SANKET J. BULSARA
                                                United States Magistrate Judge

Brooklyn, New York